**Everett SAWYER, Defendant Below, Appellant,**

v.

**STATE of Delaware, Plaintiff Below, Appellee.**

Supreme Court of Delaware.

Submitted: Dec. 7, 1993.
Decided: Dec. 22, 1993.

---

Joseph M. Bernstein, Wilmington, for appellant.

Andrea M. Maybee, Deputy Atty. Gen., Dept. of Justice, Wilmington, for appellee.

Before MOORE, WALSH, and HOLLAND, JJ.

WALSH, Justice:

The appellant, Everett Sawyer ("Sawyer"), was convicted of Murder Second Degree, Conspiracy Second Degree and Misdemeanor Theft following a jury trial in the Superior Court. Sawyer contends that the trial judge committed error in not declaring a mistrial after concluding that the prosecution had engaged in improper questioning of a State witness. We conclude that the trial judge acted correctly in refusing to grant a mistrial. Accordingly, we affirm.

I

The State's evidence at Sawyer's trial established the following sequence of events. On March 8, 1991, police discovered the body of Arthur Roberts ("Roberts") in his residence on Silverside Road in New Castle County. Roberts had been severely beaten and his home ransacked. His automobile, a 1983 Honda Accord, was missing. Some weeks earlier, Roberts had reported to police that he had been threatened by two individuals whom Roberts had befriended and permitted to reside in his home. These individuals, Sawyer and Robert T. Jackson ("Jackson"), had damaged Roberts' automobile after he had evicted them.

Acting on a tip, the police found Roberts' vehicle and later arrested Sawyer when he entered the vehicle. Sawyer admitted to police that he and Jackson had taken Roberts' vehicle. Sawyer also told police that Jackson had been arrested, on other charges, in Pennsylvania, where he was still incarcerated. Both Jackson and Sawyer wore blood stained clothing at the time of their respective arrests. At trial, the State presented evidence from several witnesses who recounted the efforts of Roberts, who was an AIDS volunteer, to aid Sawyer and Jackson while they were periodically homeless and destitute. Jackson had been diagnosed as HIV positive. Both Sawyer and Jackson were heard making threats to kill Roberts after he evicted them from his residence.

Sawyer's defense was that, although present in the Roberts' residence, he inflicted no fatal blows. This defense was presented through the testimony of Jackson, who had

earlier pled guilty to Murder First Degree. Jackson claimed that he alone beat Roberts and forced Sawyer to assist in tying Roberts and removing his body to the bathroom.

The most damaging testimony against Sawyer was given by Kimberly Royle ("Royle"), an acquaintance of Sawyer. Royle testified that Sawyer came to her house on March 8, 1991, with blood on his hands and pants. Sawyer advised her that he had cut himself punching out windows and that he and Jackson had beaten Roberts, tied him up, and "thought they had killed him."

Royle also testified concerning a letter she received from Jackson, while he was in jail, in which Jackson described the killing. Royle testified for the State as a witness under subpoena. She was asked by the prosecutor if she was "concerned about testifying." When Royle responded in the affirmative she was then asked, "What are you concerned about?" Royle replied that she was afraid "for my kids." The defense objected at sidebar to Royle's recounting of her fear for the safety of her children on the ground that the jury might infer that she had been threatened by Sawyer. Upon inquiry by the Court as to "why the prosecutor would elicit that kind of testimony," the prosecutor claimed that he was simply seeking an explanation as to why the witness appeared upset and "apologized" for any adverse inference. After a voir dire examination of the witness, out of the presence of the jury, established that she had not been threatened by Sawyer, defense counsel moved for a mistrial. It was argued that Royle's testimony implied that Sawyer was a violent person.

The trial court ultimately denied the motion for mistrial after commenting that it considered the prosecutor's conduct "a very serious matter." The Court, however, immediately gave the following special instruction to the jury:

> Ladies and gentlemen, a few minutes ago you heard testimony from Mrs. Royle, that she said she did not want to be here, that she wanted to be subpoenaed and that she was upset because she was afraid for herself and for her children.
>
> While you were waiting in the jury room, it was developed that there have been no threats whatsoever made against her by Mr. Sawyer, by Mr. Jackson, or by any member of their family or families. It was developed that basically her feeling of apprehension was a product of her own mind.
>
> I should also tell you that when Mr. Butler asked those questions, he knew what the answers were going to be. If you came to any conclusion that there were any threats made by this defendant, none were made, and you should simply strike that impression from your mind. I can't say whether it was a deliberate attempt to mislead you. It may have been inadvertent.

## II

On appeal, Sawyer argues that, given the closeness of the case against him, Royle's testimony that she was fearful of testifying implanted in the jury's mind a prejudicial inference that he was a violent person fully capable of engaging in Roberts' killing. This inference, it is contended, was too deeply engraved to be cured by the court's cautionary instruction. The State maintains that the evidence against Sawyer was overwhelming and that whatever taint arose from the prosecutor's conduct was effectively cured by the court's prompt and explicit instruction.

The parties agree that this Court reviews the refusal to grant a mistrial under an abuse of discretion standard. *Thompson v. State,* Del.Supr., 399 A.2d 194, 199 (1979). That standard takes into consideration the trial judge's unique perspective in gauging the impact of the allegedly prejudicial conduct in the trial setting. It is, of course, a matter of concern that the trial court rejected the prosecutor's claim that the improper questioning of the witness was inadvertent. Indeed, the court noted that it "frankly didn't quite believe Mr. Butler when he says he wasn't thinking of the inference that might be drawn." We again voice our concern over the deliberate efforts of a prosecutor to sow prejudice through improper tactics. *See Brokenbrough v. State,* Del.Supr., 522 A.2d 851 (1987) (collecting cases).

Given the trial judge's implicit rejection of the prosecutor's claim of surprise, we must assume that the prosecutor's action in eliciting inadmissable and highly prejudicial testimony was intentional. *Weddington v. State,* Del.Supr., 545 A.2d 607, 610 (1988). The inquiry then becomes whether the elicited testimony affected the defendant's right to a fair trial. *Id.* at 612. In making that determination we apply three factors: (1) the closeness of the case, (2) the centrality of the issue, and (3) the steps taken to mitigate the effects of the error. *Hughes v. State,* Del. Supr., 437 A.2d 559, 571 (1981).

Although Sawyer argues that the State's case was highly circumstantial, our view of the record suggests that the evidence against Sawyer was strong and compelling. It was undisputed that both Sawyer and Jackson were bitter toward Roberts and had in fact damaged his property on previous occasions. It is also not in dispute that both were present at his killing and that both left the crime scene in Roberts' vehicle. In addition to Royle, Sawyer admitted to one other witness that he had beaten Roberts and tied him up. The central issue facing the jury in this case was the extent of Sawyer's participation in the killing. The improper testimony elicited from Royle—that Sawyer was capable of threatening bodily harm—was directed to an issue not in serious dispute. There was independent evidence that Sawyer and Jackson had threatened Roberts. While Royle's initial testimony may have suggested a willingness on the part of Sawyer to threaten a witness, Sawyer's animosity toward Roberts was not seriously at issue at trial. Such testimony may have been improperly elicited because it focused on a peripheral matter, but the evidence was not of great significance.

Finally, we note that the trial court's effort to mitigate the effect of the improper testimony were immediate and forceful. The court emphatically instructed the jury that there was no basis for the witness' fear of testifying, and, additionally, advised the jury that the prosecutor's questions were misleading. Even when prejudicial evidence is admitted, its prompt excision followed by a cautionary instruction will usually preclude a finding of reversible error. *Pennell v. State,* Del.Supr., 602 A.2d 48, 52 (1991). We are satisfied that the trial judge's prompt and effective instruction cured any prejudice resulting from the improper question of the witness. Under the circumstances we conclude that Sawyer was not denied his right to a fair trial. Accordingly, the convictions are AFFIRMED.