IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| COREY HOLMES, | § | |
| | § | No. 438, 2015 |
| Defendant Below-<br>Appellant, | § | |
| | § | Court Below: Superior Court |
| | § | of the State of Delaware |
| v. | § | |
| | § | |
| STATE OF DELAWARE, | § | ID No. 0901020659 |
| | § | |
| Plaintiff Below-<br>Appellee. | § | |
| | § | |

Submitted: February 17, 2016
Decided: March 14, 2016

Before **STRINE**, Chief Justice, **VALIHURA**, and **VAUGHN**, Justices.

## ORDER

On this 14th day of March 2016, it appears to the Court that:

(1) Defendant-Below/Appellant Corey Holmes appeals from a Superior Court order denying his second amended motion for post conviction relief. He states three claims. First, he contends that his trial counsel was ineffective by failing to move to suppress his statement to police and failing to request a limiting instruction regarding the use of the statement at trial. Second, he contends that trial counsel was ineffective when he failed to object to a curative jury instruction during closing arguments. Finally, he contends that the cumulative effect of the first two claims warrants a new trial. We find no merit to Holmes's appeal and affirm.

(2) On January 27, 2009, Resean Freeman offered Holmes a ride after Freeman saw him walking on the side of Route 13 in New Castle, Delaware. After entering the vehicle, Holmes pointed a weapon at Freeman, ordered him out of the car, and then drove away. Holmes later called Freeman and told him where his car was located.[1]

(3) On the same evening that Holmes took Freeman's car, Madinah Elder and Harry Smith heard a knock at their door in Wilmington, Delaware. Upon opening the door, Holmes pointed a gun at Smith and began demanding money. After handing over some money, Elder fled the home and notified the police. Holmes was apprehended after a police officer followed footprints leading from Elder's home. He was charged with offenses related to the robbery. On February 4, 2009, Holmes was appointed counsel and a preliminary hearing was held.

(4) In the meantime, Freeman identified Holmes as the person who took his car. The police interrogated Holmes regarding this incident on February 19, 2009.[2] After reading the *Miranda* rights, the officer asked Holmes if he understood them. Holmes replied, "Yes."[3] Holmes then asked if he had charges, and the officer clarified that

---

[1] Although the incident occurred on January 27, Freeman did not notify the police until a week later after Freeman recognized Holmes in a newspaper article.

[2] A redacted version of Holmes's statement was admitted at trial in two parts, one being forty-five minutes and the other five minutes. While Holmes quotes the non-redacted version of his statement on appeal, neither a transcript nor the audio recordings of the redacted or non-redacted version were included in the appendix.

[3] Appellant's Op. Br. at 8.

2

he was informing Holmes of his rights before he talked to him. The officer asked Holmes again if he was willing to talk about what happened. Holmes responded: "I don't know what's goin [sic] on yet."[4] The officer explained again that he had questions about a carjacking. Ultimately, Holmes agreed to speak with the officer and signed a written waiver of his *Miranda* rights.

(5) Holmes discussed the carjacking with the officer and also volunteered statements regarding the robbery. He told the officer that he did not rob Elder and was at her home to purchase drugs. He told the officer that he knew Freeman and had contacted him to purchase drugs as well. According to Holmes, Freeman picked him up so that the two men could go retrieve the drugs. Holmes then told the officer that he became uncomfortable and asked Freeman to drive him home. At this point, the following exchange occurred:

| Holmes: | I think I'm gonna need lawyer or something man because I don't know what . . . |
| Officer: | Listen, here's the deal. You have a right to get a lawyer. I told you that in the beginning. You have the right . . . |
| Holmes: | I don't know how people can just say I done something. |
| Officer: | Well that's why I'm here to talk to you. |
| Holmes: | But, I'm already charged with that. |
| Officer: | You're already charged with it, but, this has a long process to go through, alright. There is a long |

---

[4] *Id.*

3

|        | process. I still have to talk to the Attorney General's Office about all this and tell them my case. Then they're going to look at it and decide whether to keep going with the charges or not. |
| Holmes: | Please help me man. Please help me.[5] |

(6) Although the officer repeated Holmes's right to counsel, Holmes did not invoke that right. As Holmes continued talking with the officer, he admitted that he met with Freeman to purchase drugs but ultimately stole the drugs and left in Freeman's car. He also said that he called Freeman later to let him know where to pick up his car. After the interview, Holmes was charged with offenses related to the carjacking. Those charges were then consolidated with the robbery charges.

(7) At trial, as part of the State's case, Freeman testified that he saw Holmes walking on the side of the road and offered to give him a ride. Freeman then testified that, once in the car, Holmes pulled out a gun and said, "Get . . . out of the car you bitch ass."[6] Freeman complied and Holmes drove off. The State also called Elder and Smith. Both testified that Holmes knocked on their door and entered with a gun. Elder testified that she was able to flee the home while Holmes was distracted.

(8) In his defense, Holmes testified that he intended to meet Freeman to purchase drugs but when they met, he took the drugs from Freeman. He then said that

---

[5] *Id.* at 9.

[6] Appellant's Op. Br. App. at A94.

4

Freeman was coming for him, so he took Freeman's car without his permission. He also testified that he went to Elder's home to purchase drugs. He stated that Elder had shorted him on the amount, so he took the drugs without paying. Throughout his testimony, Holmes denied having a weapon during either incident.

(9) During closing arguments, the State objected when defense counsel referred to Freeman coming after Holmes. The State believed that defense counsel was beginning to argue a "choice of evils" defense. Defense counsel had previously, during trial, been instructed by the trial court that if he wished to present a "choice-of-evils" defense, he was required to submit a proposed instruction in writing. At a side bar, the State asserted that defense counsel was presenting a "choice-of-evils" argument in his closing. In response the trial court stated: "He's not that far yet. . . If it comes next, I will instruct the jury exactly what happened yesterday. Understand that is not a defense."[7] Defense counsel then continued with his closing argument:

> So, [Holmes] tells you that [Freeman] comes around the car, and is coming after him, and he jumps - goes around the car, jumps in the car and drives off. And that's how he ends up behind the wheel, and that's how he ends up driving away, because he wants to get away from [Freeman].[8]

---

[7] *Id.* at A241.
[8] *Id.*

The State objected a second time.  In response, the trial court instructed the jury as follows:

> Yes.  Ladies and gentlemen, there is a defense in our Criminal Code that is entitled Choice of Evils, and, I won't explain it to you because it's not in this case.  We discussed it among counsel yesterday during our conference about instructions, and [defense counsel], and I told [defense counsel] that if he wanted an instruction on that defense which has lots of elements to it, just like there are lots of elements to the crime, that he should present a written request in writing for an instruction which he declined to do.  So that concept is simply not in this case, and the jury may not consider that the defendant was in some kind of bind, and just had to do what he did with regard to taking the car.  That's a conceivable defense if a lot of technical things are proven, but it's not in this case.[9]

(10) The jury returned a verdict finding Holmes guilty of Carjacking First Degree,[10] five counts of Possession of a Firearm During the Commission of a Felony,[11] two counts of Robbery First Degree,[12] one count of Burglary First Degree,[13] one count of Attempted Robbery First Degree,[14] and one count of Possession of a Deadly Weapon by a Person Prohibited.[15]  Holmes was sentenced to forty-two years incarceration, suspended after thirty-seven years.

---

[9] *Id.* at A241-242.

[10] 11 *Del. C.* § 836.

[11] 11 *Del. C.* § 1447A.

[12] 11 *Del. C.* § 832.

[13] 11 *Del. C.* § 826.

[14] 11 *Del. C.* § 531.

[15] 11 *Del. C.* § 1448.

6

(11) In 2010, Holmes filed a direct appeal asserting that the trial court erred: (1) in admitting into evidence a newspaper article concerning the carjacking and robberies that Freeman had used to identify Holmes; and (2) mischaracterizing the defense as a "choice of evils" defense to the jury, when that was not the defense that he was arguing at all.[16] This Court determined that the admission of the newspaper article without a limiting instruction was harmless error. This Court further concluded, as to Holmes's second contention, that he was not entitled to a "choice of evils" instruction. As discussed below, it appears that this Court did not correctly understand Holmes's second contention. His conviction was affirmed.[17]

(12) Holmes then filed a *pro se* motion for postconviction relief claiming two instances of ineffective assistance of counsel, prosecutorial misconduct, and abuse of discretion on the part of the trial court. On June 7, 2012, the trial court adopted a Commissioner's recommendation and denied Holmes's motion. In May 2013, this Court reversed the trial court's denial after finding that Holmes was entitled to

---

[16] In Delaware, the "choice-of-evils" defense is codified under 11 *Del. C.* § 463, which states:
> [C]onduct which would otherwise constitute an offense is justifiable when it is necessary as an emergency measure to avoid an imminent public or private injury which is about to occur by reason of a situation occasioned or developed through no fault of the defendant, and which is of such gravity that, according to ordinary standards of intelligence and morality, the desirability and urgency of avoiding such injury clearly outweigh the desirability of avoiding the injury sought to be prevented by the statute defining the offense in issue.

[17] *Holmes v. State*, 2010 WL 5043910 (Del. Dec. 9, 2010).

representation during postconviction proceedings pursuant to a recent amendment to Superior Court Criminal Rule 61.[18] With the assistance of appointed counsel, Holmes filed a second amended motion for postconviction relief on November 27, 2013.

(13) In April 2015, a Superior Court Commissioner filed his report (the "Report") recommending that Holmes's amended motion for postconviction relief be denied. The Commissioner found that Holmes's statements to police were voluntary, and therefore the ineffective assistance claim regarding the statements was unjustified. The Commissioner reasoned that nothing in the record suggested that Holmes was coerced or tricked into speaking to the officer. Additionally, the officer continued to remind Holmes of his right to counsel and asked Holmes several times if he was willing to talk. The Commissioner also discussed the fact that Holmes had extensive prior involvement with the criminal justice system: forty-seven arrests for Title 11 offenses and twenty-one arrests for Title 16 offenses. The Commissioner concluded that the totality of the circumstances suggested that Holmes understood his rights and that he waived them voluntarily. Because his statements were voluntary, the Commissioner held that Holmes's trial counsel was not ineffective. The Commissioner also held that Holmes was not able to demonstrate any prejudice that resulted from his trial counsel's actions. The Commissioner reasoned that in applying

---

[18] *Holmes v. State*, 2013 WL 2297072, at *1 (Del. May 23, 2013).

8

the second prong of *Strickland*, the "Court cannot see how any actions or words by Counsel could have prejudiced the jury more so than the Defendant's own voluntary testimony."[19]

(14) The Commissioner also concluded that the remainder of Holmes's amended motion rehashed arguments already decided on direct appeal. Holmes argued that this Court was "clearly in error" when it affirmed his conviction in 2010 regarding the "choice-of-evils" issue. The Commissioner disagreed with Holmes, and found that even if the claim were to be decided on its merits, Holmes again failed to establish the prejudice required by *Strickland*. Given the testimony presented at trial, the jury had enough information to convict Holmes. The Commissioner found it doubtful that any statements made by the trial judge concerning the "choice-of-evils" defense had any effect on the jury.

(15) Based on the findings of the first two claims, the Commissioner found no merit to Holmes's cumulative effect claim. On July 23, 2015, the trial court adopted the Commissioner's Report and Recommendation and denied Holmes's motion for postconviction relief. This appeal followed.

---

[19] Appellant's Op. Br., Ex. A at 14.

9

(16) This Court reviews the Superior Court's denial of a motion for postconviction relief for an abuse of discretion.[20] "To prevail on a claim of ineffective assistance of counsel under *Strickland*, [a defendant] must show that there was (1) deficient attorney performance, i.e., Trial Counsel's performance fell below an objective standard of reasonableness, and (2) prejudice resulted from that deficient performance."[21] "A defendant must make specific allegations of actual prejudice and substantiate them."[22] "[A]ny 'review of counsel's representation is subject to a strong presumption that the representation was professionally reasonable.'"[23]

(17) Holmes claims that the admission of his February 19, 2009 statement to the police violated his rights under both the Fifth and Sixth Amendments of the U.S. Constitution and the corresponding provisions of the Delaware Constitution. "Under the Delaware Constitution, . . . 'if a suspect attempts to invoke [his or her] *Miranda* rights during an interrogation, but does not do so unequivocally, the police must clarify the suspect's intention before continuing with the interrogation.'"[24] "[A] finding of ambiguity rests on the totality of the circumstances . . . ."[25] The waiver must be "the product of a free and deliberate choice rather than intimidation,

[20] *Gattis v. State*, 955 A.2d 1276, 1280-81 (Del. 2008).
[21] *Stevenson v. State*, 2016 WL 258783, at *2 (Del. Jan. 19, 2016).
[22] *Wright v. State*, 671 A.2d 1353, 1356 (Del. 1996).
[23] *Id.*
[24] *Garvey v. State*, 873 A.2d 291, 296 (Del. 2005).
[25] *Id.* at 297.

10

coercion, or deception . . . [and] must have been made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it."[26]

(18) Here, Holmes fails to show how his trial counsel's assistance was deficient under the first prong of *Strickland*. Holmes's trial counsel asserted in a Rule 61(g) affidavit in the Superior Court that he did not file a motion to suppress because he determined that Holmes's constitutional rights were not violated. The record supports this contention. First, Holmes was read his *Miranda* rights on the audio recording of the interrogation. The officer then asks, "Understand all that? That's a yes?" to which Holmes replies, "Yes."[27] Holmes then tells the officer that he "do[esn]'t know what's goin [sic] on yet,"[28] and the officer tells him the questions are about a carjacking. After Holmes claims his innocence, the officer again asks, "Are you willing to talk to me then?"[29] Holmes replied affirmatively. Holmes points to no evidence of coercion, intimidation, or deception by the police in obtaining this explicit waiver.

---

[26] *Hubbard v. State*, 16 A.3d 912, 917 (Del. 2011).
[27] Appellant's Op. Br. at 8.
[28] *Id.*
[29] *Id.*

11

(19) Further, the police attempted to clarify Holmes's intentions after he said, "I think I'm gonna need a lawyer or something man because I don't know what . . ."[30] The officer stopped questioning Holmes and stated: "Listen, here's the deal. You have a right to get a lawyer. I told you in the beginning. You have the right . . . ."[31] Holmes then interrupted the officer and said, "I don't know how people can just say I done something."[32] Here, Holmes did not unequivocally invoke his right to an attorney, but the officer still sought clarification by reminding Holmes of his right to counsel. Holmes cut the officer's reminder short and continued to talk. The totality of the circumstances clearly show that Holmes knew of, and chose not to invoke, his *Miranda* rights.

(20) Holmes also contends that his Sixth Amendment right to counsel was violated when he was questioned by the officer because he had already been appointed counsel at his preliminary hearing regarding the charges relating to the robbery. "[A]n accused who is admonished with the [*Miranda*] warnings . . . has been sufficiently apprised of the nature of his Sixth Amendment rights, and of the consequences of abandoning those rights, so that his waiver on this basis will be considered a knowing and intelligent one."[33] First, the officer approached Holmes

---

[30] *Id.* at 9.
[31] *Id.*
[32] *Id.*
[33] *Turner v. State*, 957 A.2d 565, 574 (Del. 2008).

regarding the carjacking, a crime with which Holmes had not been charged. After waiving his *Miranda* rights, Holmes volunteered information related to the robbery, which acted as a waiver of his Sixth Amendment right to counsel regarding the robbery charges.

(21) Holmes also claims that trial counsel was deficient when he failed to request a limiting instruction that Holmes's statement to police could only be used for impeachment purposes. Holmes gave his statement to police after a knowing and voluntary waiver of his *Miranda* rights. Holmes has not asserted any reason for which trial counsel could request a limiting instruction, and therefore it was objectively reasonable that he did not request a limiting instruction.

(22) Even if Holmes's trial counsel was objectively unreasonable, Holmes has failed to establish prejudice under *Strickland*. Holmes chose to testify at trial and admitted taking Freeman's car and taking drugs from Elder's home. The only true issue was that Holmes denied having a weapon during the carjacking and the robbery. Holmes fails to show how excluding his statements to police or providing a limiting instruction would have changed the outcome at trial since he always maintained that he did not have a weapon. Therefore, Holmes's first claim is without merit.

(23) In his second claim, Holmes argues that the jury was unable to fairly consider his argument that he was not guilty of carjacking first degree, robbery first

13

degree, and the other weapons-related offenses but only of the lesser-included charges of carjacking second degree and theft because the Superior Court disrupted his counsel's closing arguments, and admonished his counsel in the jury's presence, on the ground that Holmes was seeking to use an inapplicable "choice-of-evils" defense to win an acquittal. We have reviewed the record carefully and agree with Holmes that his counsel never asked for a "choice-of-evils" instruction nor did he attempt to make such an argument.

(24) As important, in his direct appeal, Holmes argument was not that he was unfairly impeded from presenting a "choice-of-evils" defense.[34] It was that the trial court's interruption of his counsel's closing, and that its suggestion that Holmes's counsel was not diligent, undermined his counsel's credibility and compromised the jury's ability to understand that if it determined that Holmes did not have a weapon and that he stole the car in order to avoid an attack by Freeman, it should convict Holmes of the lesser-included offenses of carjacking second degree and theft but acquit him of the weapons-related offenses.[35]

---

[34] Appellant's Op. Br. at 14-19.

[35] *Id.* at 18-19:

> The explanation by the trial judge . . . made it appear that the [choice-of-evils] defense was not available due to a lack of diligence by the defense counsel. The instruction was not requested because it did not fit the case. Holmes was not arguing that his use of force was justified; he was arguing he did not use force. In each crime, he conceded taking someone else's property but denied using a gun. The difference in the crime is [] very significant and

14

(25) Although we agree with Holmes that his counsel's argument was confused by the trial court[36] and then by this Court on direct appeal,[37] we nonetheless find no basis for relief. A fair reading of the record indicates that before and after the interruption, Holmes's counsel was able to fully argue Holmes's version of events—specifically, that Holmes had no weapon and took the car to get away from Freeman's threatening behavior—and that if the jury embraced that, it should acquit him on the more serious charges.[38] Furthermore, the trial court gave an instruction on the lesser-included charges.[39] Given these realities, we find no basis to conclude that Holmes was prejudiced by the trial court's interruption and admonishment based on the State's objection.

(26) Because Holmes failed to establish that his counsel was ineffective in his first two claims, his third claim fails without further analysis.

---

the difference in sentencing even more significant.

[36] *See* Appellant's Op. Br. App. at A241-42.

[37] *See Holmes*, 2010 WL 5043910, at *5 ("Holmes next argues that the Superior Court erred in refusing to allow him to argue a choice-of-evils defense.").

[38] Appellant's Op. Br. App. at A238-45.

[39] *Id.* at A225-27 (instructing the jury in regards to carjacking second degree, theft, and burglary second degree).

NOW, THEREFORE, IT IS ORDERED that the judgment of the Superior

Court is **AFFIRMED.**

BY THE COURT:

_____
Justice