ALEXANDER BENNETT, Defendant Below-Appellant,
v.
STATE OF DELAWARE, Plaintiff Below-Appellee.
No. 514, 2009.
Supreme Court of Delaware.
Submitted: January 15, 2010.
Decided: March 18, 2010.
Before HOLLAND, JACOBS, and RIDGELY, Justices.

ORDER
HENRY DuPONT RIDGELY, Justice.
This 18th day of March 2010, it appears to the Court that:
(1) Alexander Bennett ("Bennett") appeals his conviction in Superior Court for Carrying a Concealed Deadly Weapon. Bennett contends that the Superior Court erred in refusing to suppress his alleged confession because it was obtained in violation of his privilege against self-incrimination under the Fifth Amendment of the U.S. Constitution and Article I, Section 7 of the Delaware Constitution. Specifically, he contends his Miranda[1] warnings were not clearly administered, he did not implicitly or explicitly waive his rights, and he did not comprehend the nature of the right abandoned nor the consequences of abandoning it. We find no merit to his appeal and affirm.
(2) On January 19, 2008, Officers Robert Reeves and Brian Conkey observed Bennett driving his girlfriend's Accura, which appeared to have illegal window tint. The officers checked the registration through DMV records and learned that the vehicle was not insured. The officers initiated a car stop by activating their lights and Bennett promptly pulled over to the side of the road. Officer Conkey instructed Bennett to roll down his window and obtained Bennett's license and registration. After learning Bennett was not the registered owner of the vehicle, the officers asked Bennett to step out of the vehicle.
(3) Bennett consented to a search of the car. Officer Conkey searched the vehicle and discovered a nine-millimeter firearm which was "on the floor, in between the console and the passenger seat." Officer Conkey testified at trial that the driver of the car would not have been able to see the gun because it was completely concealed between the passenger seat and the center console. He also testified that the driver of the vehicle could access the gun with no difficulty from the driver seat.
(4) Upon finding the handgun, Officer Reeves placed Bennett in handcuffs. At trial, Officer Reeves testified that he then read Bennett his Miranda rights from a police-issued Miranda rights card, and that he always read from the card. Officer Reeves testified that Bennett stated, "Yes, I understand" after being read his Miranda rights. He also recalled Bennett stating "I fully understand my rights". Officer Reeves explained that Bennett spoke calmly with a slight accent during the arrest; and that his accent was not as dramatic and drawn out as it was in court.[2] Bennett testified that Officer Reeves did not read the Miranda rights from a card. According to Bennett, the officer told him only that he had the right to remain silent.
(5) Bennett spoke with a heavy accent at trial, to the extent that the Superior Court judge had difficulty understanding him. Officer Reeves testified that he had no difficulty understanding Bennett at the time of arrest and, that they "fully understood each other." Officer Reeves also testified that, when asked why he had the handgun, Bennett stated that he had been the victim of a robbery and had obtained the gun from an associate. Bennett testified that he told the officer he was the victim of a robbery and was only thinking about getting a gun, but had not obtained one.
(6) At trial, defense counsel argued that Bennett's statements should be suppressed because the State did not prove Bennett intelligently waived his rights. After voir dire of the officer and the arguments by counsel, the Superior Court stated:
I'm satisfied from the officer's testimony that he gave a clear recitation of the Miranda warnings from the card that he read from, the clarity of the defendant's statement that he understood those rights. And, according to the police officer, that statement was clear. It was not a nod of the head, it was not a grunt, it was not assumed by conduct, that it was an affirmative statement by the defendant that he understood his rights. Among those rights was a right not to answer questions and to remain silent.
Other circumstances would include the defendant's conduct throughout the encounter. In this instance, the defendant revealed cooperative demeanor throughout the encounter. From the moment that the police first attempted to stop him, he cooperated, cooperated with directions given to him by the police to exit his vehicle, and, then, cooperated as the defendant was asked to return to the police officer's vehicle and ultimately would respond to questions.
The LaFave Treatise indicates that the time is, in fact, a relevant factor, including the time between reading the rights, stating an understanding of the rights, and, then, the commencement of the questioning. From the circumstances described by the police officer, I'm satisfied that there appears to be a close temporal proximity. I can't quantify it in minutes, but still close in time between the reading of rights, the statement of understanding of the rights, and the beginning of questioning and, then, defendant's demeanor in responding properly to questions, therefore, all suggest to the Court that a valid knowing, intelligent, and voluntary implied waiver of Miranda rights occurred.
(7) The State then introduced Bennett's alleged confession. The jury convicted Bennett of carrying a concealed deadly weapon. This appeal followed.
(8) We generally review the Superior Court's denial of a motion to suppress, after an evidentiary hearing, for abuse of discretion.[3] Our review is de novo, however, "[w]here it is claimed that the Superior Court erred in formulating and applying the law to undisputed facts."[4]
(9) As an initial matter, Bennett contends that his alleged confession was introduced in violation of the Delaware Constitution. Bennett, however, failed to specifically assert a violation of the Delaware Constitution before the Superior Court. Because no argument was fairly presented below on a violation of the Delaware Constitution, Bennett is barred from making such a claim on appeal.[5]
(10) Next, Bennett contends that the Superior Court erred in denying his motion to suppress his alleged confession because it was obtained in violation of his privilege against self-incrimination under the Fifth Amendment of the U.S. Constitution. Specifically, he contends his Miranda warnings were not clearly administered, he did not implicitly or explicitly waive his rights, and he did not comprehend the nature of the right abandoned and the consequences of abandoning it.
(11) The concept of implied waiver of Miranda rights has been recognized in Delaware for several decades.[6] We have explained that "[i]n the clear absence of an express waiver, the validity of [a defendant's] alleged waiver of her Miranda rights depends on a `totality of the circumstances' test to determine whether there was an `implied waiver.'"[7]
(12) Bennett argues that no waiver was made in this case. The primary issue for implied waiver is whether the defendant's actions and words constituted a course of conduct indicating an implied waiver; the Court must be able to "clearly infer[] [waiver] from the actions and words of the person interrogated."[8] A waiver must also be made "voluntarily, knowingly and intelligently."[9]
(13) We have adopted a two part test to determine whether a waiver is voluntary.[10] The test is as follows:
First, the relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion or deception. Second, the waiver must have been made with a full awareness both of the nature of the right being abandoned and the consequences of the decision to abandon it. Only if the "totality of the circumstances surrounding the interrogation" reveal both an uncoerced choice and the requisite level of comprehension may a court properly conclude that the Miranda rights have been waived.[11]
(14) The first prong requires an inquiry into whether the waiver was a result of police overreaching;[12] "whether the defendant's will was `overborne' at the time he made the statement."[13] The second prong requires that the defendant comprehend the plain meaning of his basic Miranda rights. There are numerous factors involved in analyzing the second prong: behavior of the interrogators, conduct of the defendant, his age, his intellect, his experience,[14] and cultural heritage,[15] among others. The burden rests on the State to demonstrate, by a preponderance of evidence, that Miranda rights have been waived.[16]
(15) The first prong of the waiver test has been met. The record gives no indication that Officers Reeves or Conkey resorted to physical or psychological pressure or wore Bennett down with improper interrogation tactics or lengthy questioning or by trickery or deceit. Bennett agrees that the Officers did not violate the first prong.
(16) The second prong of the waiver test has also been met. Officer Reeves testified that he read the Miranda rights off of his department-issued card, as was his practice whenever he Mirandized a suspect. The Superior Court was satisfied that the State had laid the proper foundation for Miranda. The trial judge stated that he was "satisfied from the officer's testimony that he gave a clear recitation of the Miranda warnings from the card that he read from."
(17) A fundamental tenet of American jurisprudence is that determinations of credibility are for the trier of fact to resolve.[17] There is sufficient evidence in the record to support the Superior Court's findings that the officer gave a clear recitation of Miranda warnings and that a knowing, intelligent and voluntary implied waiver of those rights occurred.
NOW, THEREFORE, IT IS ORDERED that the judgment of the Superior Court is AFFIRMED.
NOTES
[1] Miranda v. Arizona, 384 U.S. 436 (1966).
[2] Bennett is Jamaican, but a resident of the United States.
[3] Donald v. State, 903 A.2d 315, 318 (Del. 2006); Norcross v. State, 816 A.2d 757, 762 (Del. 2003); Virdin v. State, 780 A.2d 1024, 1030 (Del. 2001).
[4] Donald, 903 A.2d at 318; accord Hunter v. State, 783 A.2d 558, 561 (Del. 2001); Jones v. State, 745 A.2d 856, 860 (Del. 1999). See also Garvey v. State, 873 A.2d 291, 298 ("Thus, to the extent an appeal from a motion to suppress implicates a defendant's right to remain silent, our review is de novo."); Rambo v. State, 939 A.2d 1275, 1278 ("We review an alleged constitutional violation relating to a trial judge's evidentiary ruling de novo.")
[5] Ortiz v. State, 869 A.2d 285, 291 (Del. 2005).
[6] See Hooks v. State, 41 A.2d 189, 200 (Del. 1980) ("The absence of an express waiver does not necessarily render a confession inadmissible. . ."); Crawford v. State, 580 A.2d 571, 577 (Del. 1990) ("[Miranda] is subject to waiver simply by proceeding to respond.")
[7] Rambo, 939 A.2d at 1279.
[8] DeAngelo, 2000 WL, at *8 (citing Butler, 441 U.S. at 373.)
[9] Miranda, 384 U.S. at 444.
[10] Marine v. State, 607 A.2d 1185, 1195-96 (Del. 1992).
[11] Moran v. Burbine, 475 U.S. 412 (1986).
[12] Liu, 628 A.2d at 1379.
[13] State v. Rooks, 401 A.2d 943, 947 (Del. 1979).
[14] DeAngelo, 2000 WL, at *5.
[15] Liu, 628 A.2d at 1380.
[16] DeJesus v. State, 655 A.2d 1180, 1192 (Del. 1995).
[17] Pryor v. State, 453 A.2d 98, 100 (Del. 1982).