# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

STATE OF DELAWARE        :
       :        Case No. 1706021180
v.        :        In and For Kent County
       :
RAYMOND WARD        :
       :
Defendant.        :

## OPINION & ORDER

Submitted: June 27, 2018
Decided:  August 7, 2018

### *Upon Defendant's Motion to Suppress*
### *GRANTED, IN PART & DENIED, IN PART*

Jason C. Cohee & Stephen E. Smith, Deputy Attorneys General, DEPARTMENT OF JUSTICE, Dover, Delaware, *Attorneys for the State*.

Thomas D. Donovan, Esquire, OFFICE OF CONFLICTS COUNSEL, Dover, Delaware, & Zachary A. George, Esquire, HUDSON, JONES, JAYWORK & FISHER, Dover, Delaware, *Attorneys for the Defendant*.

Clark, J

The State charges Defendant Raymond Ward (hereinafter "Mr. Ward") with Murder in the First Degree for his alleged participation in the 2017 murder of Dequan Dukes. Mr. Ward moves to suppress statements made to the Dover Police pursuant to *Miranda v. Arizona*[1] (hereinafter referred to as "*Miranda*"). Based on the evidence presented at a suppression hearing, Mr. Ward argues that he did not waive his rights, and if he did, he later sought to invoke them twice but the interrogating officer did not scrupulously honor his invocation of those rights.

The State argues that the evidence at the suppression hearing established that Mr. Ward expressly waived his rights. The State concedes, however, that at two points later in the interview, Mr. Ward ambiguously invoked his right to stop the interrogation. Nevertheless, the State argues that at both points, the detective clarified that Mr. Ward wanted to continue.

After considering the evidence presented, the Court finds that the State met its burden of proving by a preponderance of the evidence that Mr. Ward waived his *Miranda* rights. Furthermore, the Court finds that after Mr. Ward first ambiguously asserted his rights, he signaled his desire to continue the session. After the second ambiguous assertion, however, the detective did not ask clarifying questions to establish Mr. Ward's intent. As a consequence, any statements made after Mr. Ward's second invocation of his right to remain silent, must be suppressed from use at trial. For these reasons and those that follow, Mr. Ward's motion to suppress pursuant to *Miranda* is **GRANTED, IN PART**, and **DENIED, IN PART.**

**Findings of Fact after the Suppression Hearing**

On June 13, 2018, the Court held a suppression hearing and finds the following facts by a preponderance of the evidence. The State charges Mr. Ward with the felony murder of Dequan Dukes, who was shot and killed on June 27, 2017.

---

[1] 384 U.S. 436 (1966).

The State also charges Mr. Ward with Attempted Robbery First Degree, Possession of a Firearm During the Commission of a Felony, and Conspiracy Second Degree. At the time the police took him into custody, he allegedly illegally possessed a firearm that was unassociated with the Dequan Dukes shooting.

A detective conducted a custodial interrogation of Mr. Ward at the Dover Police station (hereinafter the "station"). Although the interrogating detective did not participate in Mr. Ward's arrest, he volunteered to question Mr. Ward because they went to the same high school and played on the same high school basketball team. The record of the custodial interrogation is divided into two segments. The first segment is a video recording that takes place in an interview room at the station. The second segment is an audio recording of the second portion of the interrogation taking place in another room at the station.

The detective began the questioning by telling Mr. Ward that he had to read him his *Miranda* rights before continuing. Upon entering the room, the detective's demeanor and body language were familiar and non-threatening. After reading Mr. Ward his *Miranda* rights, the detective asked him "do you understand these rights that I have explained to you?" Based upon the detective's testimony at trial and the Court's review of the video, the Court finds that Mr. Ward nodded affirmatively.

Next, the detective asked Mr. Ward: "having these rights in mind, do you wish to talk to me know? Just about what, what, like I said downstairs, about today." The detective testified that Mr. Ward responded "oh yeah," although the detective admitted he did not have an independent recollection as to what Mr. Ward said until he reviewed the video. After reviewing the video several times, the Court cannot discern what Mr. Ward said. Nevertheless, he responded to the waiver request by leaning back casually, stating something that under the circumstances sounded and appeared in the video to be an affirmative response, and then calmly began answering the detective's questions.

The detective then began the interrogation by discussing Mr. Ward's recent marriage and other routine matters. He then asked Mr. Ward questions regarding the circumstances surrounding his arrest,[2] such as where and when he was arrested. The detective then told Mr. Ward that a gun was found in the home and asked about it. Mr. Ward readily answered the detective's questions about the firearm, confirmed that it was his, where it was found, and its caliber. He further stated that he just obtained the firearm, that is was for his protection, and that it had not been used for any murders.[3]

The detective then steered the questioning toward the homicide:

> Detective: You just got it?
> Mr. Ward: Protection for me and my cousin.
> Detective: I'm with you. Well, you wonder why? Because your names are coming up in all this other stuff.
> Mr. Ward: Everything, my name come up in everything.
> Detective: Well, do you want to talk about those situations?
> Mr. Ward: No, there's probably cameras all in here. I know that.

At that point, the State concedes that Mr. Ward ambiguously asserted his *Miranda* rights. The detective then sought to clarify Mr. Ward's intent. Namely, he specifically asked Mr. Ward if he wanted to continue the questioning, and if he did not, the detective told him he could speak to him in jail at another time. The detective

---

[2] Mr. Ward has a separate case pending for weapons related charges, which include charges surrounding the alleged seizure of a firearm not involved in the murder.

[3] The video tape evidences the following exchange:

> Detective: And let me ask you this, this one thing I will ask you, is that gun going to come back with any bodies on it?
> Mr. Ward: No.
> Detective: Is it going to come back with nothing?
> Mr. Ward: No, No.

4

then began to leave the room; Mr. Ward, however, stopped him and signaled for him to come back. At that point, the following exchange took place:

> Mr. Ward: Let me talk to you.
> Detective: Alright – what's that?
> Mr. Ward: Let me talk to you.
> Detective: What's up?
> Mr. Ward: I'll wait until you get back.
> Detective: No, I'm good. What's up?
> Mr. Ward: You get my bail down, I'll talk to you.

Following this exchange, the detective explained the bail process and indicated that he could not promise to reduce his bail. The detective told Mr. Ward that when he had an attorney he could request to speak with him later, or Mr. Ward could speak to him now to help himself. At that point, the State conceded in its written submission that there was a second ambiguous assertion of Mr. Ward's right to remain silent. Namely, the next exchange included the following:

> Detective: What I can tell you is that if you get an attorney, when you get an attorney, you want to come talk and you want to come talk to me, you can request that. I will go up there and talk to you guys to help yourself out.
> Mr. Ward: I'm not trying to get quizzed
>
> . . .
>
> Detective: You can talk to me to help yourself out.
> Mr. Ward: Nah bro.

In reviewing the balance of the video and audio recordings, the detective asked no further clarifying questions. The detective testified that he interpreted the "Nah bro" response to mean that Mr. Ward did not think he could help himself by waiting to speak to the detective later, as opposed to meaning that Mr. Ward did not want to talk to him. After that point, the detective continued questioning Mr. Ward

5

who eventually made incriminating statements on the audio recording, placing himself at the scene at the time of the shooting.

### General Evidentiary Standards and Relevant *Miranda* Requirements

In a suppression hearing involving *Miranda* issues, the burden is on the State to show by a preponderance of the evidence that Mr. Ward validly waived his *Miranda* rights.[4] At a suppression hearing, the Court sits as the finder of fact, and evaluates the weight of the evidence.[5] As the finder of fact, the Court also evaluates the credibility of the witnesses and the weight to be given to their testimony as well as the weight due other evidence submitted at the hearing.

With regard to the substantive issues raised in the hearing, both the Federal and Delaware Constitutions protect persons against self-incrimination by prohibiting the government from compelling a person to be a witness against himself.[6] This privilege against self-incrimination is the right of a person "to remain silent unless he chooses to speak in the unfettered exercise of his own will."[7] Because investigators exert "inherently compelling pressures"[8] during a custodial interrogation, authorities must apprise criminal suspects of their *Miranda* rights under the Fifth Amendment before questioning them.[9] The right to silence may be invoked, in any manner, at any time before or during a custodial interrogation.[10] A

---

[4] *Colorado v. Connelly*, 479 U.S. 157, 168 (1986); *Howard v. State*, 458 A.2d 1180, 1183 (Del. Super. Ct. 1983).

[5] *Turner v. State*, 957 A.2d 565, 570–71 (Del. 2008).

[6] U.S. CONST. amend. V.; *see also* DEL. CONST., art. I, § 7 (providing that an accused "shall not be compelled to give evidence against himself").

[7] *Malloy v. Hogan*, 378 U.S. 1, 8 (1964).

[8] *See e.g.*, *Thompson v. Keohane*, 516 U.S. 99, 107 (1995).

[9] *Miranda*, 384 U.S. at 471 (1966).

[10] *Id* at 472.

court will suppress statements gathered during an interrogation that is continued despite a defendant invoking his right to silence.[11]

A defendant may waive his *Miranda* rights if he does so knowingly, intelligently, and voluntarily.[12] The United States Supreme Court has held that a court may find an intelligent and knowledgeable waiver of the right to remain silent without the defendant expressly waiving his right if the suspect impliedly waives his rights.[13] The concept of an implied waiver of *Miranda* rights has long been recognized by the Delaware courts as well.[14] In the absence of a clear, express waiver, the validity of an allegedly implied waiver of a suspect's *Miranda* rights depends on the totality of the circumstances.[15] An examination of the totality of the circumstances requires the Court to consider a number of factors, including the behavior of the detective, Mr. Ward's conduct, his age, his experience, his intelligence, and all other pertinent factors.[16]

In *Hubbard v. State*, the Delaware Supreme Court adopted the United States Supreme Court's two-part test to determine whether a suspect has effectively waived his Fifth Amendment *Miranda* rights, as follows:

> [f]irst, the relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception. Second, the waiver must have been made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it. Only if the "totality of the circumstances surrounding the interrogation" reveal

---

[11] *See Dodson v. State*, 513 A.2d 761, 763 (Del.1986) ("The right to remain silent is a constitutional right ... [c]onsequently, when a defendant invokes his right to silence, the police may not initiate continued interrogation on the crimes at issue.") (*citing Edwards v. Arizona*, 451 U.S. 477, 484 (1981)).

[12] *Garvey v. State*, 873 A.2d 291, 296 (Del. 2005).

[13] *North Carolina v. Butler*, 411 U.S. 369 (1979); *Berghuis v. Thompkins*, 560 U.S. 370 (2010).

[14] *See Hooks v. State*, 41 A.2d 189, 200 (Del.1980) ("The absence of an express waiver does not necessarily render a confession inadmissible ..."); *see also Bennett v. State*, 992 A.2d 1236, 2010 WL 987025, at *3 (Del. 2010) (TABLE) (recognizing that the concept of implied waiver of *Miranda* rights has been recognized in Delaware for several decades.").

[15] *Bennett*, 2010 WL 987025, at *3.

[16] *Wahlen v. State*, 434 A.2d 1346, 1351 (Del. Super. Ct. 1980).

both an uncoerced choice and the requisite level of comprehension may a court properly conclude that the *Miranda* rights have been waived.[17]

It is this test that the Court must apply.

### Mr. Ward's words, conduct, and demeanor demonstrate under the totality of the circumstances that he voluntarily waived his *Miranda* rights.

Mr. Ward asserts that he did not waive his *Miranda* rights, and emphasizes several circumstances in support of his argument. First, he argues that the video recording does not reflect how he responded when the interviewing detective asked him if he understood the rights that were just read to him. Furthermore, Mr. Ward asserts that the video does not demonstrate that he expressly waived his *Miranda* rights notwithstanding the detective's testimony that he did. He also argues that the detective's questions confused him by changing topics.

At the outset, the Court finds the first prong articulated in *Hubbard* to be satisfied. There is no evidence that the detective or any other officer influenced Mr. Ward's waiver through the use of intimidation, coercion, or deception. Although they spoke over each other at some points during the interview, the detective did not attempt to coerce or intimidate Mr. Ward in any way. To the contrary, the interrogation began as relaxed and friendly and remained so from the administration of Mr. Ward's rights through the beginning portion of the questioning. The detective, a high school basketball teammate of Mr. Ward's, obviously put Mr. Ward at ease. Mr. Ward did not appear to be apprehensive and his choice to participate in the interview was free and deliberate.

Furthermore, the detective testified, and the video portion of the interview confirms, that the detective clearly and correctly read Mr. Ward his *Miranda*

---

[17] *Hubbard v. State*, 16 A.3d 912, 917 (Del. 2011)(citing *Moran v. Burbine*, 475 U.S. 412, 421 (1986)).

8

warnings.    Mr. Ward argues that there was no clear acknowledgement by him that he understood his rights.  The Court finds differently.  The detective testified at the hearing that Mr. Ward nodded, thereby confirming he understood his rights after the detective read them.  The Court has also carefully reviewed the video several times and observed Mr. Ward nod affirmatively in direct response to that question.

Upon a thorough and careful review of the record, the Court also finds by a preponderance of the evidence that Mr. Ward expressly waived his *Miranda* rights. The detective testified that when he asked Mr. Ward "do you wish to speak to me now," Mr. Ward stated "oh yea."  The Court reviewed that specific portion of the video several times as well.  Although Mr. Ward did not speak loudly enough to be heard clearly on the video recording, his body language (stretching and leaning casually back in his chair), the tone of his response (although his exact words were inaudible on the tape), and the fact that he then immediately started answering questions in a casual manner, support the fact that he expressly waived his *Miranda* rights.  Given the detective's testimony at the hearing that Mr. Ward expressly waived his rights, these corroborating facts support such a finding.  Furthermore, the fact that the detective was closer to Mr. Ward than the microphone is a reasonable explanation for the difference in the taped evidence versus the detective's in-court recollection.

Moreover, in the alternative, under the totality of the circumstances, the Court finds that Mr. Ward also impliedly waived his *Miranda* rights through his words and conduct.   In the "clear absence of an express waiver, the validity of [a defendant's] waiver of [his] *Miranda* rights depends the a 'totality of the circumstances' . . .."[18] While a waiver must include affirmative conduct and silence alone is not enough, a waiver can be inferred from the combination of a suspect's words and conduct.[19]   In

---

[18] *Rambo v. State*, 923 A.2d 1275, 1279 (Del. 2007).
[19] *North Carolina v. Butler,* 441 U.S. 369, 373 (1979).

this regard, the United States Supreme Court in *North Carolina v. Butler* recognized that "silence, coupled with an understanding of rights and a course of conduct indicating waiver may demonstrate that the suspect has waived his rights."[20]

Here, the same factors that corroborate the detective's testimony regarding express waiver compel a finding by a preponderance of the evidence that Mr. Ward alternatively impliedly waived his *Miranda* rights. In viewing the video, immediately after Mr. Ward affirmatively nodded after receiving his rights, Mr. Ward casually stretched and leaned back in his chair. After saying something, which clearly were not words of protest, he began casually and immediately answering the detective's questions. As recognized by the Delaware Supreme Court in *Bennett v. State*, the time between when an officer administers rights and the start of questioning is an important factor in the totality of the circumstances.[21] The close temporal proximity between the advisement of the rights and the start of questioning strongly support that Mr. Ward knowingly, intelligently, and voluntarily waived his *Miranda* rights.

Furthermore, later in the interview, Mr. Ward attempted to place conditions on his willingness to continue answering questions. Namely, he made the statement after saying "let me talk to you", that "you get my bail down, I'll talk to you." [22] As the Delaware Supreme Court has recognized, placing conditions upon continuing to answer questions is another factor supporting the finding of an implied waiver by conduct. Namely, in *Garvey v. State*, the Delaware Supreme Court addressed the relevance of an attempted conditional waiver in a similar context as follows:

> [t]he phrase "depends on what you ask me," even without any context, indicates a contingency of some sort. It implies that the speaker will decide whether he will or will not respond based on the conduct or

---

[20] *Id.* at 373.
[21] *Bennett*, 2010 WL 987023, at *2.
[22] He sought these conditions, however, *before* the point when he ambiguously asserted his rights on the second occasion.

speech of another. Through this prospective decision making, the speaker necessarily must understand the import of the original request. Otherwise, the speaker could not have responded with a contingent phrase in the first place. *In the custodial interrogation setting, this type of response to an investigating officer's Miranda inquiry demonstrates that the speaker heard and understood his rights.* [23]

In Mr. Ward's case, the Court finds that even in the arguable absence of an express waiver, the evidence of record compels an alternative finding that Mr. Ward impliedly waived his *Miranda* rights under the totality of the circumstances.

**Mr. Ward ambiguously invoked his *Miranda* rights twice, and after the second time, the detective did not ask clarifying questions about Mr. Ward's intent before continuing with the interrogation.**

Under the Delaware Constitution, unlike its federal counterpart, if a suspect attempts to invoke his *Miranda* rights during an interrogation, but does not do so unequivocally, the police must clarify the suspects intention before continuing with the interrogation.[24] Where a defendant unambiguously waives (and does not reassert) his right to silence, interrogating officers need not ask clarifying follow-up questions.[25] However, when a suspect ambiguously asserts his or her rights during questioning, a different approach is required.[26] If the suspect conveys that he or she wants to terminate the interrogation, the interrogating officer must scrupulously honor the suspect's right to terminate it.[27] Whether a statement is an ambiguous

---

[23] *Garvey*, 873 A.2d at 298–99 (emphasis added).
[24] *Garvey*, 873 A.2d at 296 (citing *Norcross v. State*, 816 A.2d 757, 762 (Del. 2002)).
[25] *Ploof v. State*, 856 A.2d 539, 547 (Del. 2004) ("[Ploof's] statement was not ambiguous and, therefore, the police were not required to seek further clarification of his intent before proceeding to question him").
[26] *Crawford v. State*, 580 A.2d 571, 574-76 (Del. 1990).
[27] *Michigan v. Mosley,* 423 U.S. 96, 104 (1975).

invocation of the right to silence is determined on a case-by-case basis, analyzing the totality of the circumstances.[28]

In the event that a suspect ambiguously asserts his or her rights, an interviewer may clarify a defendant's intention through various means, including repeating *Miranda* warnings; however, the attempts must not be coercive.[29] Custodial interrogations are inherently persuasive, and because the speaker's true intent is often unknown, the clarification of ambiguity is vital to safeguarding the values embedded in the Fifth Amendment right to silence and the Sixth Amendment right to counsel.[30]

Mr. Ward asserts that his statements must be suppressed because he ambiguously invoked his *Miranda* rights, and that the detective failed to clarify his intent before continuing with the custodial interrogation. The Court finds, and the State concedes, that Mr. Ward ambiguously asserted his right to remain silent at two points in the questioning.

First, Mr. Ward at one point answered the detective's question "well, do you want to talk about those situations", with "no, there probably are cameras all in here." After the detective indicated he was prepared to terminate the interview, Mr. Ward twice stated "let me talk to you" and "you get my bail down, I'll talk to you." These unsolicited statements by Mr. Ward, in the context of an already valid waiver, clarified his intent to continue.

Soon thereafter in the interview, however, there was a different situation. Namely, Mr. Ward, after a discussion about bail, stated "I'm not trying to get quizzed." The detective then stated "you can talk to me to help yourself out," but Mr. Ward responded "nah bro." The State concedes in its supplemental written submission that this was a second ambiguous assertion of his rights. The Court, likewise, finds it to have been an ambiguous invocation.

---

[28] *Garvey*, 873 A.2d at 297.
[29] *Crawford*, 580 A.2d 571 at 577.
[30] *Garvey*, 873 A.2d at 296.

In response, however, the State points to no attempts by the detective to seek clarification; nor does the Court find any in either the video or audio segments. Rather, the State argues sufficient clarification through the detective's previous efforts to clarify Mr. Ward's intent *prior* to the second ambiguous invocation. Namely, the detective essentially ignored the second ambiguous invocation, and instead resumed questioning as if he was addressing Mr. Ward's prior concern regarding cameras in the room.

The detective did not testify at the hearing regarding any attempts he made to clarify Mr. Ward's intent *after* this second ambiguous invocation. With regard to the portion following the "nah bro" comment, the detective testified only that he interpreted Mr. Ward's statement "nah bro" to mean that Mr. Ward did not want to delay talking to the detective because that would not help Mr. Ward's case. Under the totality of the circumstances, Mr. Ward's response generates two competing inferences regarding his intent: (1) one consistent with the detective's subjective interpretation of Mr. Ward's intent to continue to talk because Mr. Ward did not think waiting would benefit him; and (2) one completely consistent with Mr. Ward's intent to discontinue the interrogation.

Delaware's "clarification approach" required the detective to limit his questions after this second ambiguous invocation to those designed to clear up the ambiguity.[31] Only at that point may the substantive questioning continue. Otherwise, defendant's right to remain silent must be "scrupulously honored" by the interrogating officer.[32] Here, because the State references no attempts to clarify a direct response of "nah bro" in response to "you can talk to me to help yourself out," the Court finds that the questioning should have ceased at that point.

---

[31] *See Crawford*, 580 A.2d at 575 (discussing the approach in the separate but parallel context of an ambiguous request for counsel).
[32] *Dodson*, 513 A.2d at 763 (Del. 1986).

Finally, although not raised by the State, the Court notes that at the beginning of the second segment (audio only), the detective stated "you said you wanted to talk to me outside, outside the room." The evidence at the hearing, however, did not establish that Mr. Ward stated this; nor did any recorded statements in evidence include such a request from Mr. Ward. The two recorded segments overlapped and the Court reviewed the continuous record. The recordings evidence that Mr. Ward's only relevant response to that statement was "you're wasting my time, bro." The Court cannot properly find based on the evidence at the hearing that the detective clarified the ambiguity before proceeding with the substantive questioning.

Under the totality of the circumstances, the assertion of Mr. Ward's rights on this second occasion was ambiguous and the detective did not ask any, much less reasonably sufficient clarifying questions, to resolve the ambiguity. As a result, all statements made after Mr. Ward's response "nah bro" must be suppressed from use at trial.

## IV.   Conclusion

For the reasons set forth above, Mr. Ward waived his *Miranda* rights during his custodial interrogation with the detective. After his second ambiguous invocation of his rights, however, the detective sought no clarification regarding Mr. Ward's intent. As a result, any statements made after that point are suppressed from use at trial. Mr. Ward's motion to suppress is accordingly **GRANTED, IN PART** and **DENIED, IN PART**.

**IT IS SO ORDERED**

/s/Jeffrey J Clark
Judge

14