**IN THE SUPERIOR COURT OF THE STATE OF DELAWARE**

| | | |
|---|---|---|
| STATE OF DELAWARE | ) | |
| | ) | |
| v. | ) | I.D. No. 1909016237 |
| | ) | |
| JEFFREY KING, | ) | |
| | ) | |
| Defendant. | ) | |

Date Submitted: November 9, 2020
Date Decided: January 21, 2021

*Upon Defendant's Motion to Suppress Evidence, Amended Motion to Suppress Buccal Swabbing
and Motion to Suppress Statements*
***GRANTED in Part and DENIED in Part***

Eric H. Zubrow, Esquire, Erika R. Flaschner, Esquire, Delaware Department of Justice, Wilmington, Delaware, *Attorneys for the State*.

Kevin J. O'Connell, Esquire, Christina L. Ruggiero, Esquire, Delaware Office of Defense Services, Wilmington, Delaware, *Attorneys for Jeffrey King*.

**DAVIS, J.**

## I.      INTRODUCTION

This is a criminal action.  On September 30, 2019, the State of Delaware obtained an indictment against Defendant Jeffrey King charging him with two counts of Unlawful Sexual Intercourse First Degree.

Defendant Jeffrey King has filed three motions to suppress: (i) a Motion to Suppress Evidence seized from Mr. King's residence and vehicle (the "Search Warrant Motion"), (ii) an Amended Motion to Suppress Buccal Swabbing (the "Buccal Swabbing Motion") and (iii) a Motion to Suppress Defendant's Statements (the "*Miranda* Motion").  Mr. King argues that the search of his residence and vehicle violated the Fourth and Fourteenth Amendment of the United States Constitution and Article I, § 6 of the Delaware Constitution  Mr. King also contends that a

buccal swab taken from him violated the Fourth Amendment of the United States Constitution, Article I, § 6 of the Delaware Constitution and 11 DEL. C. 23. Finally, Mr. King claims that his statements were obtained in violation of *Miranda*. The State opposed, in part, the Search Warrant Motion, the Buccal Swabbing Motion and the Miranda Motion.

On November 9, 2020, the Court held a hearing on the motions. At the conclusion of the hearing, the Court took the motions under advisement. For the reasons set forth below, the Search Warrant and Buccal Swabbing Motions are **DENIED,** and the *Miranda* Motion is **DENIED in part** and **GRANTED in part**.

## II.    RELEVANT FACTS

### A.  THE AUGUST 4, 1993 ASSAULT

On August 4, 1993, a woman (the "Woman")[1] was attacked in Newark, Delaware.[2] The attacker took her clothing and her identification card.[3] The attacker penetrated her vaginally with his penis.[4] The attacker then fled with her personal items including the Woman's "North Carolina driver's license, University of Delaware ID, 'Carolina' t-shirt, denim shorts and panties."[5] The Woman immediately reported the attack to police.[6] The police initiated an investigation.[7] The Woman underwent a Sexual Assault Nurse Examination ("SANE") during which her vagina was swabbed for DNA.[8] The police were unable to solve this case in 1993.

### B.  DNA EVIDENCE LEADS POLICE TO SUSPECT MR. KING OF THE 1993 ASSAULT.

The police reopened and reassigned the case to Detective Gerasimov in November 2017.[9]

---

[1] The name is not relevant to the decision here.
[2] Mot. to Suppress Evid. (hereafter "Search Warrant Mot.") ¶ 4.
[3] *Id.*
[4] *Id.*
[5] *Id.*; *Id.* Ex. A (Search Warrant Affidavit of Probable Cause).
[6] State's Resp. to Def.'s Mot. to Suppress (hereafter "Search Warrant Mot. Resp.") 1.
[7] *Id.*
[8] *Id.* 1-2.
[9] Search Warrant Mot. Ex. A.

2

Investigators identified Mr. King as a suspect.[10]

In August 2019, Newark Police Department detectives conducted surveillance on Mr. King, his residence and place of employment.[11] On August 14, 2019, Mr. King purchased a Wawa iced tea in a plastic bottle, drank from the bottle and placed the bottle in a plastic Wawa bag.[12] Mr. King subsequently discarded the plastic Wawa bag containing the empty plastic Wawa iced tea bottle in a Walmart trash can.[13]

Investigators seized the plastic Wawa bag from the Walmart trash can and sent the Wawa iced tea bottle to the Delaware Division of Forensic Science to process for DNA evidence.[14] The Division of Forensic Science prepared a report comparing swabs from the Wawa iced tea bottle to the vaginal swabs from the SANE kit.[15] The report indicated that the vaginal swab matched the bottle sample.[16] The probability of randomly selecting an unrelated individual with a matching DNA profile was one in > 7,000,000,000,000 (7 trillion).[17]

Using this information, the Newark Police Department obtained a search warrant permitting them to obtain DNA from Mr. King by buccal swab or blood draw.[18]

### C. THE POLICE SEARCH MR. KING'S RESIDENCE AND VEHICLE.

On October 3, 2019, a Pennsylvania court issued search warrants (the "Pennsylvania Search Warrants") for Mr. King's residence at 123 Wesley Lane, Coatesville PA, 19320 and Mr. King's vehicle, a 2013 Chevrolet Silverado.[19] The Pennsylvania Search Warrant applications

---

[10] *Id.*
[11] Amend. Mot. to Suppress Buccal Swabbing (hereafter "Amend. Buccal Swabbing Mot.") ¶ 2.
[12] *Id.*
[13] *Id.*
[14] *Id.*
[15] State's Resp. to Def.'s Amend Mot. to Suppress Buccal Swabbing (hereafter "Amend. Buccal Swabbing Mot. Resp.") Ex. A.
[16] *Id.*
[17] *Id.*
[18] Amend. Buccal Swabbing Mot. ¶ 1.
[19] Search Warrant Mot. Ex. A; Search Warrant Mot. Ex. B (Search warrants for Mr. King's vehicle and residence).

were identical except for the search location. The supporting probable cause affidavits contained, among other facts, the information about the investigation leading to Mr. King's DNA match with the vaginal swabs from the 1993 assault.

The search warrants sought:

a) Any items (letters, notes, papers, documents, identifications, etc.) in whatever form they may be found, that are associated with the identified victim, to include but not limited to items containing personal identifying information of the identified victim. Personal identifying information is to include but is not limited to name, date of birth, driver's license number(s), address(es), etc.;

b) Any items (letters, notes, papers, documents, etc.) in whatever form they may be found, that would show Jeffrey KING's travel plans, destinations, family relations, and/or other information related to Newark, DE and elsewhere.

c) Any items (letters, notes papers, documents, contact books, etc.) in whatever form they may be found, containing any identifying information (names, phone numbers, etc.) that would lead to identifying any friends or associates of Jeffrey King;

d) Any and all photo albums and loose photographs depicting Jeffrey KING;

e) Journals, dairies [sic], newspaper articles in whatever form they may be found, and/or any other records that are related to the incident described in this affidavit or any other serious crimes;

f) All electronic devices that can easily be used to connect to the internet for accessing and using web-based services or strong digital data, which includes but is not limited the accessing and viewing web pages, submitting online form [sic], conducting electronic communications, etc. These electronic devices include but are not limited to computers, mobile phones, tablets, iPads, PDAs, etc.;

g) All external memory devices that can easily be used to store electronic data, including but not limited to hard drives, external hard drives, SIM cards, USB drives, floppy disks, cassette tapes, compact disks, RAM or ROM units, SIM cads, cellular phones, computers, etc.;

h) "Carolina" t-shirt, denim shorts, and panties;

i) Receipts and other paperwork related to rental of storage unit(s) and/or offsite storage locations.[20]

---

[20] Search Warrant Mot. Ex. A.

The Pennsylvania Search Warrant applications also describe how Detective Gerasimov knows, "[f]rom a combination of education, training, experience discussions with other law enforcement officers, and study of legal documents," that sexual offenders keep items they've taken from victims as trophies; and also keep written journals, diaries and other records in easily accessible locations such as homes, vehicles, storage sheds and storage containers.[21] On the same basis, the Pennsylvania Search Warrant applications provide that Detective Gerasimov knows that suspects conduct research and attempt to access updated information about crimes they committed using electronic devices with internet access; and that those devices are in easily accessible locations.[22] In addition, the Pennsylvania Search Warrant applications state that Detective Gerasimov knows that suspects use storage facilities to store items.[23] Finally, on the same basis, Detective Gerasimov knows that people keep photos of themselves, family and friends; as well as contact information thereof in easily accessible locations.[24]

Police executed the Pennsylvania Search Warrants on October 3, 2019.[25] Investigators located older photos of Mr. King in the residence.[26] Investigators recovered nothing else of evidentiary value from the residence or vehicle.[27]

### D. MR. KING'S OCTOBER 3, 2019 ARREST AND INTERROGATION.

Coatesville Police arrested Mr. King and transported him to the Coatesville Police Department station on October 3, 2019.[28] During booking, the booking officer asked Mr. King

---

[21] *Id.*
[22] *Id.*
[23] *Id.*
[24] *Id.*
[25] Search Warrant Mot. Resp. 2.
[26] *Id.*
[27] *Id.*
[28] *Id.*; State's Resp. to Mot. to Suppress Def.'s Statement (hereafter "*Miranda* Mot. Resp.") 2.

for pedigree information.[29]  An officer also asked for his cellphone passcode.[30]  While escorting Mr. King to an interrogation room, an officer explained that Mr. King might have to wait for someone to interview him.[31]  Mr. King asked, "Do I need my lawyer?"[32]  The officer responded, "No, I'm just telling you this is our interview room."[33]

At 3:20 PM, officers entered the room to interview Mr. King.[34]  One of the officers read Mr. King's *Miranda* rights.[35]  Mr. King read and signed a *Miranda* form.[36] The officer asked if Mr. King would make a statement and Mr. King responded, "Sure, why not."[37]

At 4:19 PM, the officers informed Mr. King that they had evidence linking him to a sexual assault and Mr. King stated, "I think I need to call a lawyer."[38]  The officers told him that this was the only chance he would have to respond to allegations and Mr. King asked, "Or what? What happens?"[39]  For the next two minutes, the officers talked about how Mr. King had the opportunity to tell the police the "full story." [40]  The officers also warned him that staying silent may not be in his best interest.[41]  Then, during an additional two minutes, the officers described potential consequences that a victim might feel.[42]  Finally, the officers referenced Mr. King's earlier statement, saying, "You said it out of your own mouth, you're a person that tries to make things right."[43]

---

[29] *Miranda* Mot. Resp. Ex. A at 7:00 (Arresting officer body camera footage).
[30] *Id.* Ex. A at 7:30.
[31] *Id.* Ex. A at 11:50.
[32] *Id.* Ex. A at 12:05.
[33] *Id.* Ex. A at 12:07.
[34] *Id.* Ex. B at 3:20 PM (Interrogation room footage).
[35] *Id.* Ex. B at 3:27 PM.
[36] *Id.* Ex. B at 3:28 PM.
[37] *Id.* Ex. B at 3:28 PM.
[38] *Id.* Ex. B at 4:19 PM.
[39] *Id.* Ex. B at 4:20 PM.
[40] *Id.* Ex. B at 4:20-4:22 PM.
[41] *Id.*
[42] *Id.* Ex. B at 4:22-4:24 PM.
[43] *Id.* Ex. B at 4:24 PM.

At this point, Mr. King reiterated that he thought that he "better call an attorney."[44]  An interrogating officer said, "you have those rights and I'm willing to go over those rights again with you."[45]  Mr. King said, "I guess I'm going to jail."[46]  The officer then said, "Yes, you have the right to an attorney but think about doing the right thing."[47]  Mr. King said, "I guess I'm going to jail aren't I? I need an attorney."[48] The officer then responded, "That's clear at this point," and ended the interview.[49]

### III.    PARTIES' CONTENTIONS

#### A.  THE SEARCH WARRANT MOTION

Mr. King argues that the Pennsylvania Search Warrant's supporting affidavits were invalid because there is an insufficient factual nexus between the alleged crime and Mr. King's residence and vehicle.  As such, Mr. King claims that these affidavits do not support a finding of probable cause and the issuance of the Pennsylvania Search Warrants.

The State contends that the affidavits sufficiently set out facts supporting a finding of probable cause for searching Mr. King's residence or vehicle.  The State additionally argues that there is nothing suggesting that evidence related to the crime would not be at his residence or vehicle.

#### B.  THE BUCCAL SWAB MOTION

Mr. King argues that the police violated his reasonable expectation of privacy under the Fourth Amendment by (i) constantly surveilling him for several days and (ii) conducting a warrantless search by seizing a Wawa iced tea bottle that he discarded in a public trashcan at

---

[44] *Id.* Ex. B at 4:24 PM.
[45] *Id.* Ex. B at 4:24 PM.
[46] *Id* Ex. B at 4:24 PM.
[47] *Id.* Ex. B at 4:24 PM.
[48] *Id.* Ex. B at 4:25 PM.
[49] *Id.* Ex. B at 4:25 PM.

Walmart. Alternatively, Mr. King contends that the Delaware Constitution guarantees a higher privacy expectation in one's garbage than that guaranteed under the Fourth Amendment. Mr. King claims that that State violated his Fourth Amendment rights by seizing his DNA from the Wawa iced tea bottle in a warrantless search. Mr. King argues that without the DNA sample seized from the Wawa iced tea bottle, then there is insufficient evidence to make a probable cause finding and to justify the buccal swab search warrant.

The State argues that Mr. King had neither a subjective nor an objectively reasonable expectation of privacy in the Wawa iced tea bottle. Furthermore, the State contends that swabbing the Wawa iced tea bottle is not a search for Fourth Amendment purposes and required no warrant.

## C. THE *MIRANDA* MOTION

Mr. King argues that the police officers obtained several statements in violation of *Miranda*. Mr. King contends that these officers misled him on whether he needed a lawyer, therefore preventing him from voluntarily waiving his *Miranda* rights. Mr. King notes that the police officers continued asking questions even after Mr. King invoked his right to counsel. Finally, even if Mr. King ambiguously invoked his right to counsel, Mr. King argues that the police officers should have either reread the *Miranda* warnings or clarified the ambiguous invocation.

The State contends that Mr. King voluntarily and knowingly waived his *Miranda* rights; and that the police stopped questioning Mr. King after he clearly invoked his right to counsel.

## IV. DISCUSSION

### A. THE AFFIDAVIT ESTABLISHED A LOGICAL NEXUS BETWEEN THE EVIDENCE SOUGHT AND MR. KING'S RESIDENCE AND VEHICLE.

The Court finds that from the four corners of the probable cause affidavit, the police had

probable cause to believe that Mr. King's residence had evidence of the unlawful sexual intercourse.

Under Delaware's four-corners test for probable cause, "sufficient facts must appear on the face of the affidavit so . . . a reviewing Court can verify the existence of probable cause."[50] The test for probable cause only requires "that a probability . . . of criminal activity be established."[51] To establish probable cause to search a location, "first, there must be probable cause that a crime was committed, and second, there must be probable cause to believe that evidence of such a crime can be found" at the location.[52] In other words, there must be a "logical nexus between the items sought and the place to be searched."[53] The nexus "can be inferred from the type of crime, the nature of the items sought, the extent of an opportunity for concealment and normal inferences to where a criminal would hide [evidence of the crime]."[54] If there is no nexus between the items sought and the place to be searched, the evidence "will be inadmissible at trial."[55]

First, the Court finds that the affidavits established probable cause that a crime was committed because both affidavits included the Woman's description of her sexual assault.[56]

Second, the Court finds that the affidavits established a logical nexus between the items sought and Mr. King's vehicle and residence. The Pennsylvania Search Warrant supporting affidavits included statements, based on training and experience, that sexual assault offenders keep evidence from their assaults in easily accessible places. The Court considers it logical to infer that if Mr. King committed the sexual assault, and sexual offenders keep evidence from

---

[50] *Pierson v. State*, 338 A.2d 571, 573 (Del. 1975).
[51] *Jensen v. State*, 482 A.2d 105, 112 (Del. 1984) (citing *Spinelli v. United States*, 393 U.S. 410, 419 (1969)).
[52] *State v. Cannon*, 2007 WL 1849022, at *4 (Del. Super. June 27, 2007).
[53] *Dorsey v. State*, 761 A.2d 807, 811 (Del. 2000).
[54] *State v. Ivins*, 2004 WL 1172351, at *4 (Del. Super. May 21, 2004).
[55] *Id.*
[56] Search Warrant Mot. Ex. A; Search Warrant Mot. Ex. B.

9

sexual assaults in easily accessible places such as their homes and vehicles, then Mr. King would keep such evidence in his home and vehicle. The Pennsylvania Search Warrants were limited to a search for specific types of evidence—*e.g.*, the Carolina t-shirt, information kept about the Woman, possible off-site storage, old photographs that would assist in identification The Pennsylvania Search Warrants were not general warrants but were tailored for the circumstances surrounding the alleged offenses. Therefore, the Court **DENIES** the Search Warrant Motion.

B. **THE BUCCAL SWABBING DID NOT VIOLATE MR. KING'S RIGHTS UNDER THE U.S. CONSTITUTION OR DELAWARE LAW.**

On a motion to suppress evidence seized during a warrantless search, the state must show, by a preponderance, of evidence that the challenged search did not violate a defendant's rights under the U.S. Constitution or Delaware law.[57] To raise a claim that a warrantless search was illegal, the defendant "must have a reasonable expectation of privacy."[58] Under the *Katz* test, a defendant has a reasonable expectation of privacy when (1) a person exhibits an actual (subjective) expectation of privacy and (2) the expectation is one that society is prepared to recognize as objectively reasonable.[59] Government action that invades on an area where a person has an objectively reasonable expectation of privacy is "an unconstitutional search."[60]

i. *The police did not violate Mr. King's reasonable expectation of privacy by surveilling him, his residence and his place of employment.*

The Court finds that the police surveillance of Mr. King was not an illegal search. "It is well-established that '[w]hat a person knowingly exposes to the public . . . is not a subject of Fourth Amendment protection.'"[61] The police surveillance of Mr. King only extended to what

---

[57] *See State v. Coursey*, 136 A.3d 316, 321 (Del. Super. 2016).
[58] *Rodriguez v. State*, 2013 WL 5494720, at *1 (Del. Sept. 30, 2013) (citing *Katz v. United States*, 389 U.S. 347, 361 (1967)).
[59] *State v. Guaradarrama*, 2016 WL 7235694, at *6 (Del. Super. Dec. 14, 2016)
[60] *State v. Holden*, 54 A.3d 1123, 1132 (Del. Super. 2010).
[61] *Kowalski v. Scott*, 2005 WL 703757, at *1 (3d. Cir. Mar. 29, 2005) (citing *Katz*, 389 U.S. at 351).

10

would have been visible to the public, from a distance and in a manner that did not obstruct his activities. These facts put the case "outside the purview of the Fourth Amendment."[62]

Mr. King argues that the surveillance violated the Delaware constitution under *State v. Holden*.[63] *Holden* held that surreptitiously placing a GPS unit on a car and tracking a location 24 hours a day for multiple weeks "violated the Defendant's reasonable expectation of privacy and state Constitutional rights."[64] GPS surveillance that exposes "the whole of one's movement over a prolonged period of time tells a vastly different story than movement over a day as may be completed by manned surveillance."[65] In this case, the Newark Police Department's manned surveillance does not violate Mr. King's expectation of privacy in the same way prolonged GPS surveillance would. The Newark Police Department only observed Mr. King in public locations and did not surreptitiously observe Mr. King inside his home or in other private locations as was done with the GPS device.

### i. *Mr. King did not have a reasonable expectation of privacy in the Wawa iced tea bottle.*

The Court finds that Mr. King did not have a reasonable expectation of privacy in items that he deposited in a publicly accessible trash can. First, Mr. King took no action showing that he sought to preserve the Wawa iced tea bottle as private when he discarded the bottle in a public trashcan. Therefore, he did not exhibit an actual expectation of privacy in the Wawa iced tea bottle.[66]

---

[62] *See id.* ("The video surveillance of [the defendant] was taken only while [he] was in full view of many strangers, in public areas . . . . It was also taken from a distance, and in a manner that did not obstruct [his] activities. Together these facts put the video surveillance in this case outside the purview of the Fourth Amendment").

[63] 54 A.3d 1123 (Del. Super. 2010).

[64] *Id.* at 1134.

[65] *Id* at 1132.

[66] *See Bond v. U.S.*, 529 U.S. 334, 334 (2000) ("First, we ask whether the individual, by his conduct, has exhibited an actual expectation of privacy; that is, whether he has shown that 'he [sought] to preserve [something] as private.'") (citing *Smith v. Maryland*, 442 U.S. 735, 740 (1979)).

11

Second, even if Mr. King had a subjective expectation of privacy when he discarded the Wawa iced tea bottle, that expectation of privacy would not be objectively reasonable. The Fourth Amendment does not require warrants to search trash left outside the curtilage of the home.[67] States, however, "may surely construe their own constitutions as imposing more stringent constraints on police conduct that does the Federal Constitution."[68] Nonetheless, Delaware courts have held that there is no expectation of privacy in trash outside the curtilage of the home nor in public trash containers.[69] Under Delaware law, throwing away trash in a public trash container is "tantamount to 'throwing away' a subjective expectation of privacy in it that society accepts as reasonably acceptable."[70]

Mr. King exhibited no actual expectation of privacy nor would such an expectation be reasonable. Therefore, seizing the Wawa iced tea bottle was not an illegal search under the Fourth Amendment or the Delaware Constitution.

### ii. Mr. King did not have a reasonable expectation of privacy in the DNA collected from the Wawa iced tea bottle.

The Court also finds that Mr. King did not have a reasonable expectation of privacy in his DNA collected from the Wawa iced tea bottle. DNA analysis that only provides identification is "no more a search than an analysis of latent fingerprints."[71] Such analysis of physical characteristics "'involves none of the probing into an individual's private life and thoughts that

_____

[67] *See United States v. Edwards*, 717 Fed. Appx. 166, 168 (3d Cir. 2017) (citing *California v. Greenwood*, 486 U.S. 35, 40-42 (1988)).

[68] *Greenwood*, 486 U.S. at 43 (1988).

[69] *See State v. Ranken*, 25 A.3d 845, 852 (Del. Super. 2010) (holding, under *Greenwood*, that a defendant did not have a reasonable expectation to privacy in trash left outside the curtilage of his property under the Fourth Amendment); *State v. Grossberg*, 1998 WL 283491, at *4 (Del. Super. Mar. 18, 1998) (holding that the defendant did not have a reasonable expectation of privacy under the Fourth Amendment in trash thrown away in a public trash container).

[70] *Grossberg*, 1998 WL 283491, at *4 (Del. Super. Mar. 18, 1998).

[71] *Commonwealth v. Arzola*, 26 N..3d 185, 191 (Mass. 2015); *see also Maryland v. King*, 569 U.S. 435, 469 (2013) (holding that DNA sample analysis used for identification and did not reveal genetic traits is constitutional).

12

marks' a Fourth Amendment search."[72]  The DNA laboratory report only reported that Mr.

King's DNA sample matched the one previously taken from the victim.[73]  There was no

additional information that violated a protected privacy interest, such as private medical

information.[74]  Therefore, the Court finds that the State did not violate Mr. King's reasonable

expectation of privacy by testing his DNA for identification purposes.

> ### iii. *The buccal swabbing search warrant affidavit set forth sufficient facts to find probable cause.*

"The affidavit in support of a search warrant must set forth facts adequate to warrant a

reasonable man in the belief that an offense has been committed and that seizable property would

be found in a particular place or on a particular person."[75]  The Buccal Swab Search Warrant

affidavit set forth sufficient facts to believe that an offense was committed because it described

the sexual assault.[76]  This affidavit also set forth how the Newark Police Department obtained the

DNA sample and that the Delaware Division of Forensic Science matched the DNA sample to

the one taken from the victim.[77]  The Court finds that the affidavit set forth sufficient facts to

find probable cause for the search warrant authorizing a DNA sample collection from Mr. King.

The Court therefore **DENIES** the Buccal Swabbing Motion.

### C. THE POLICE VIOLATED MR. KING'S *MIRANDA* RIGHTS BY CONTINUING TO QUESTION HIM AFTER HE INVOKED HIS RIGHT TO COUNSEL.

Mr. King alleges that the police violated his *Miranda* rights by (1) deceiving him about

his need for an attorney at the outset of the interrogation and (2) failing to stop questioning him

after he invoked his right to counsel.  The Court agrees that the police violated his *Miranda*

---

[72] *Raynor v. State*, 99 A.3d 753, 761 (Md. 2014) (citing *United States v. Dionisio*, 410 U.S. 1, 15 (1973)).
[73] Amend. Buccal Swabbing Mot. Resp. Ex. A (Supplemental DNA Laboratory Report).
[74] *See King*, 569 U.S. at 464 (2013).
[75] *Jensen*, 482 A.2d at 110-11 (Del. 1984).
[76] Amend. Buccal Swabbing Mot. Ex. A (Probable Cause Affidavit).
[77] *Id.*

rights by failing to stop questioning after Mr. King invoked his right to counsel.

Under *Miranda v. Arizona*, the prosecution is barred from using statements obtained during a "custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards to secure the privilege against self-incrimination."[78] A custodial interrogation is "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way.[79] Interrogation refers not only to express questioning but also to its functional equivalent *i.e.* any practice "that the police should know is reasonably likely to evoke an incriminating response from a suspect."[80]

### i.   Statements made after Mr. King signed the Miranda *form but before he invoked his right to counsel are admissible.*

Delaware determines whether a suspect waives his *Miranda* rights under a two-part test. First, the suspect must voluntarily waive his *Miranda* rights and the waiver cannot result from "intimidation, coercion or deception."[81] Second, the suspect must be fully aware of the nature of the *Miranda* rights and the consequences of waiver.[82] The Court may only find *Miranda* waiver if "'the totality of the circumstances surrounding the interrogation' reveal both an uncoerced choice and the requisite level of comprehension."[83]

Mr. King argues that he did not waive his *Miranda* rights because the police deceived him by answering "no" when he asked if he needed a lawyer.[84] The police officer escorting Mr. King was explaining that Mr. King would have to wait for someone to speak with him for a period, and that he would be on camera when Mr. King asked if he needed a lawyer.[85] The

---

[78] *Miranda v. Arizona*, 384 U.S. 436, 444 (1966).
[79] *Id.*
[80] *Rhode Island v. Innis*, 446 U.S. 291, 301 (1980).
[81] *Bennett v. State*, 2010 WL 987025, at *3 (Del. Mar. 18, 2010).
[82] *See id.*
[83] *Id.*
[84] *Miranda* Mot. ¶ 14.
[85] *Miranda* Mot. Resp. Ex. A 11:55-12:05.

officer responded, "No, I'm just telling you that this room right here is our interview room."[86]

Before the interrogation began, the interrogating officer read the *Miranda* rights to Mr. King.[87]

Mr. King subsequently read and signed the *Miranda* form.[88]  Under the totality of the

circumstances, the Court finds that Mr. King's waiver was not coerced by deception and he

understood the consequences of waiver.  Therefore, the Court finds that Mr. King's statements

made after he signed the *Miranda* form through when he invoked his right to counsel are

admissible.

> ii.     **Mr. King's statements made after 4:19 PM on October 3, 2019 are inadmissible.**

Whether to suppress a defendant's statements under *Miranda* "embodies two distinct

inquiries."[89]  First, the Court determines whether the defendant "actually invoked his right to

counsel."[90]  Second, if the defendant invoked his right to counsel, courts may admit his responses

to further questioning if  he "(a) initiated further discussions with the police, and (b) knowingly

and intelligently waived the right he had invoked."[91]

The Court finds that Mr. King invoked his right to counsel.  An explicit request for

counsel is an unequivocal assertion of the right to counsel.[92]  If the request for counsel is

ambiguous, however, Delaware has adopted "the clarification approach."[93]  Under the

clarification approach, the interrogating officer must limit questions after the ambiguous

assertion of the right to counsel "to those designed to elicit definitive indications of intent."[94]

---

[86] *Id.* at 12:06-12:10.
[87] *Miranda* Mot. Resp. Ex. B 3:27 PM.
[88] *Id.* at 3:28 PM.
[89] *Smith v. Illinois*, 469 U.S. 91, 95 (1981).
[90] *Id.*
[91] *Id.*
[92] *See Crawford v. State*, 580 A.2d 571, 574 (Del. 1990) ("Where a suspect has made an explicit request for the assistance of counsel, the duty imposed upon the police is clear: no further questioning may occur until counsel is provided or the suspect himself initiates further conversation").
[93] *Id.* at 577.
[94] *Id.* at 575.

"[T]he clarifiying questions may not coerce or intimidate the suspect or otherwise discourage his effort to secure counsel."[95] Whether a statement is an ambiguous invocation of *Miranda* is "determined on a case-by-case basis, analyzing the totality of the circumstances."[96]

A mere expression that the defendant thinks he needs counsel is not an explicit invocation of the right to counsel.[97] It is, however, an ambiguous invocation of the right to counsel requiring clarification by the interrogating officer.[98] The Court thus finds that Mr. King ambiguously invoked the right to counsel by saying, he "thinks" he needs a lawyer.

Instead of clarifying Mr. King's ambiguous invocation of *Miranda*, however, the police officers discouraged Mr. King from securing counsel. The police officers told Mr. King that speaking to them without counsel was his only chance to explain his side of the story.[99] The police also attempted to discouraged Mr. King from securing counsel by appealing to his sense of morality.[100] Even after Mr. King reiterated that he "think[s] [he] better call an attorney,"[101] the interrogating officer continued to discourage Mr. King from seeking counsel.[102]

The police officers had to know that these statements were "reasonably likely to evoke an incriminating response" from Mr. King.[103] This means that the statements were custodial interrogation under *Miranda*.[104] The police violated his rights under Delaware law by failing to

---

[95] *Id.* at 577.
[96] *See State v. Pulliam*, 2012 WL 6845693, at *5 (Del. Super. Dec. 13, 2012).
[97] *See Holmes v. State*, 2016 WL 1055050, at *4-*5 (Del. Mar. 14, 2016).
[98] *See id.* at *5 ("Holmes did not unequivocally invoke his right to an attorney, but the officer still sought clarification by reminding Holmes of his right to counsel. Holmes cut the officer's reminder short and continued to talk. The totality of the circumstances clearly show that Holmes knew of, and chose not to invoke, his *Miranda* rights.")
[99] *Miranda* Mot. Reply Ex. B 4:20 PM.
[100] *See e.g. Miranda* Mot. Reply Ex. B 4:22-23 PM ("Just imagine for one second that's your daughter, every day they wake up, every time they turn a corner on the street, they have panic attacks . . . just for a second let that resonate").
[101] *Miranda* Mot. Reply Ex. B 4:24 PM.
[102] *See Miranda* Mot. Reply Ex. B 4:24 PM ("Yes, you have the right to an attorney but think about doing the right thing").
[103] *See Innis*, 446 U.S. at 301 (1980).
[104] *Id.*

16

limit their questioning to clarifying questions after Mr. King ambiguously invoked his right to counsel. Therefore, the Court **GRANTS** the *Miranda* Motion with respect to statements made after 4:19 PM on October 3, 2019.

### D. THE COURT WILL RESERVE RULING ON THE CELLPHONE EVIDENCE.

Mr. King also sought to suppress evidence on his cellphone because the police obtained his cellphone passcode in violation of *Miranda*. At the motions hearing, the State represented that it would not use evidence obtained from Mr. King's cellphone. The Court will consider Mr. King's motion to suppress cellphone evidence if the State indicates that it will use such evidence.

## V.     CONCLUSION

For the foregoing reasons, the Court will **GRANT in Part and DENY in Part** the *Miranda* Motion, and will **DENY** the Search Warrant Motion and the Buccal Swabbing Motion.

Dated:  January 21, 2021
Wilmington, Delaware

*/s/ Eric M. Davis*
Eric M. Davis, Judge


cc:     Eric H. Zubrow, Esq.
        Erika R. Flaschner, Esq.
        Kevin J. O'Connell, Esq.
        Christina L. Ruggiero, Esq.

17